OPINION
{¶ 1} J.T. has been adjudicated a juvenile delinquent on numerous occasions for various offenses. On April 11, 2005, he was on parole from the Department of Youth Services. One of the terms of his parole was not to violate criminal laws. On that date, April 11, 2005, he committed shoplifting, by taking a package of Kodiak Smokeless Tobacco from a Kroger store, without paying for it. He was approached by a loss prevention employee, who had observed the theft, and began running. The employee caught J.T., detained him, and notified the police. Beavercreek Police Officer Gary Kercher obtained a Miranda waiver from J.T., questioned him, and obtained J.T.'s confession.
 {¶ 2} Although J.T., at his arraignment, was willing to waive his right to counsel, the Greene County Children Services Board, which had legal custody of J.T., who was then 17 years of age, requested that counsel be assigned, and the trial court assigned counsel for J.T.
 {¶ 3} Subsequently, J.T., with his counsel present, appeared before a magistrate, was advised of all of the rights he would be giving up by admitting to the theft offense, which was a violation of the terms of his parole, waived his rights, after acknowledging that he understood them, and admitted to the theft. J.T. and his attorney were both given the opportunity to address the trial court on the issue of disposition.
 {¶ 4} The trial court fined J.T. $100, ordered him to pay court costs, and revoked his parole, ordering him to be returned to the custody of the Ohio Department of Youth Services. From the order of the trial court revoking his parole, J.T. appeals.
 {¶ 5} J.T.'s appellate counsel has filed a brief pursuant toAnders v. California (1967), 386 U.S. 738, indicating that he has found no potential assignments of error having arguable merit. We afforded J.T. an opportunity to file his own, pro se appellate brief, but he has not done so.
 {¶ 6} We have performed our independent duty, under Anders v.California, supra, to review the record, and we have not found any potential assignments of error having arguable merit. The magistrate went over all of the rights that J.T. would be waiving by admitting his offense, ascertained that J.T. understood those rights and was waiving them, and further ascertained that J.T. was voluntarily admitting his offense, for the reason that he had, in fact, committed the offense.
 {¶ 7} The trial court's having revoked J.T.'s parole, and having ordered his return to commitment with the Ohio Department of Youth Services, may seem harsh in relation to the minor nature of his offense. But J.T. has a long history of juvenile offenses, some of which are more serious than the theft of a package of tobacco. Present at the dispositional hearing, besides J.T. and his attorney, were representatives of the Greene County Children Services Board, the Ohio Department of Youth Services, and the Greene County Prosecutor's office. All of these representatives, while deferring completely to the judgment of the trial court concerning an appropriate disposition, expressed frustration, because they all seemed to feel that J.T. is capable of doing very well, but repeatedly misbehaves on the spur of the moment. The magistrate, also, expressed bafflement and frustration. This was expressed in the following colloquy between the magistrate and J.T.:
 {¶ 8} "THE COURT: Why would you put yourself at risk, sir?
 {¶ 9} "A. Honestly, that is where my problem is. I can't explain it. I can't. I do things that I don't want to do. And I don't want to do the things I do. I don't. I had just been talking that it's a possibility that I can be released from parole soon, and that day — that night was the day I talked to him that night I got in trouble. It seems like every time, every time I recognize something is going good for me, I always mess it up somehow. It is nobody else's fault. It is not peers around me. It's me. I understand that. It's my fault.
 {¶ 10} "THE COURT: You sabotage your own success.
 {¶ 11} "A. Yes. I want to find out — I really want to find out why, and I want to stop if I can. I know I can, I just — I need to understand why I put myself in situations like this.
 {¶ 12} "THE COURT: It's a good question, Mr. T, because then maybe you will be able to stop sabotaging yourself and go ahead and be successful.
 {¶ 13} "Everybody in here, everybody who has ever worked with you, including Mr. Kennie [a parole officer for the Department of Ohio Youth Services], has said you can definitely be successful. They don't understand why you make the conscious choice not to be. But they all agree that you have what it takes."
 {¶ 14} We have found no potential assignments of error having arguable merit, either in the taking of J.T.'s admission, the revocation of his parole, or in any other respect. We conclude, therefore, that this appeal is wholly frivolous. The judgment of the trial court is Affirmed.